IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARK ANTHONY BECKFORD, | :: | MOTION TO VACATE |
|     Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL ACTION NO. |
| | :: | 1:09-CR-263-TWT-GGB-1 |
| | :: | |
| UNITED STATES OF AMERICA, | :: | CIVIL ACTION NO. |
|     Respondent. | :: | 1:13-CV-3296-TWT-GGB |

## FINAL REPORT AND RECOMMENDATION

Movant is a federal prisoner who, pro se, challenges under 28 U.S.C. § 2255

his judgment of conviction. (Doc. 241.)[1] Respondent filed a brief opposing the

motion, (Doc. 247), and Movant filed a reply, (Doc. 248). For the reasons

discussed below, I recommend that the motion and a certificate of appealability be

denied.

## I.    Background

A grand jury indicted Movant and co-defendant Randy Vana Haile, Jr. for

drug and firearm crimes. (Doc. 112.) The indictment charged Movant with

conspiring to distribute at least five kilograms of cocaine and at least 1,000

kilograms of marijuana (count one); attempted possession of at least five kilograms

---

[1] All citations to the record are to case number 1:09-cr-263-TWT-GGB.

of cocaine (count two); attempted possession of at least 1,000 kilograms of

marijuana (count three); possession of five firearms, including a machine gun, in

furtherance of a drug trafficking crime (count four); knowingly possessing a firearm

with an obliterated serial number (count six); and knowingly possessing an

unregistered machine gun, as that weapon is defined in 26 U.S.C. § 5845(b) (count

seven).  (*Id.*)  In September 2010, a trial jury convicted Movant of all counts and

further found, as to count four, that Movant knew the weapon identified as a

machine gun had the characteristics of a machine gun.  (Doc. 174.)

> At trial, several Drug Enforcement Administration (DEA) agents testified about the reverse-sting operation that led to [Movant's and Haile's] . . . arrest. The agents testified that a confidential informant (CI) provided information that [Movant], who lived in Atlanta, was seeking a marijuana supplier. At the DEA's request, the CI told [Movant] about a man named Rodriguez, an undercover agent posing as a marijuana supplier.

> Thereafter, the CI and Rodriguez met with [Movant] in San Antonio. The DEA recorded this meeting, as well as the other encounters between Haile, [Movant], and the DEA's undercover agents. Rodriguez proposed a price of $300 per pound of marijuana, to which [Movant] replied, "Yeah, yeah, yeah." [Movant] stated that he would take 1,000 pounds, "If it's good," and that he would like the drugs to be delivered to the Jamaica Flava restaurant in Atlanta.

> Before the meeting concluded, the CI asked Rodriguez, in front of [Movant], "Did you tell him about the white stuff?" Rodriguez said to [Movant], "I give you good price too." [Movant] responded, "I'll call

you," and the two exchanged telephone numbers. Later, on the phone, [Movant] agreed to give Rodriguez a $25,000 security deposit for the marijuana and to meet with one of Rodriguez's associates, undercover agent Arrugueta, in Atlanta. At some point during the phone conversations, the two discussed guns. And the CI confirmed that [Movant] had easy access to guns.

When [Movant] met with Arrugueta, Haile was also present. Arrugueta asked [Movant], "Did [Rodriguez] talk to you about the tools?" [Movant] replied, "Yeah, yeah, yeah. He talked to me about it." Arrugueta asked, "What kind do you have?" [Movant] said, "my people . . . got the AK," which Arrugueta understood to mean any assault rifle, not just an AK–47. Arrugueta asked, "machine gun?" [Movant] said, "Yep." When Arrugueta asked what [Movant's] "people" wanted for the gun, [Movant] said drugs, not money. [Movant] said he had "like six [guns] so far" to exchange in the deal. Arrugueta, Haile, and [Movant] agreed to exchange two pounds of marijuana for each gun.

After Haile and [Movant] left the meeting with Arrugueta, they spoke with Rodriguez, and the parties decided that [Movant] and Haile would fly to San Antonio the next day to meet Rodriguez and discuss the marijuana deal. At the meeting, Rodriguez confirmed that he would deliver 500 pounds of marijuana, at a price of $300 per pound, to the Jamaica Flava restaurant in Atlanta.

Rodriguez again mentioned that he distributed cocaine, and Haile asked Rodriguez about the quality and quantity of cocaine Rodriguez distributed. Rodriguez offered to give Haile and [Movant] a kilogram of cocaine for $23,000, and Haile replied, "Uh-hmm."

Rodriguez then asked what kind of "nail gun," which he and [Movant] had spoken about earlier, [Movant] had. [Movant] replied, "It's a machine gun, AK." Then Rodriguez asked, "you want white?" Haile responded that Rodriguez "could throw two or three" kilograms onto

3

the marijuana load. Haile told Rodriguez, "if it's good, I'd get it, like couple days probably." Rodriguez agreed. At the conclusion of the meeting, Haile and [Movant] gave Rodriguez the $25,000 deposit.

A few days later, Rodriguez spoke with [Movant] by phone. Rodriguez said, "I got all [the] food you need for the store," and, "I also bring . . . three sugar bag for, for your friend." [Movant] replied, "Yeah, 'cause I got somebody waiting." On the morning of the scheduled drug delivery, Rodriguez called [Movant] and asked if he had the "power tool." [Movant] repeatedly stated, "I'm working on it right now."

That same day, Rodriguez and other DEA agents staged a U–Haul trailer containing hundreds of pounds of marijuana and several kilograms of cocaine at a hotel in [Smyrna, Georgia]. Rodriguez met with [Movant] and Haile in the hotel parking lot and permitted Haile to inspect the drugs. Rodriguez then asked Haile and [Movant] how much money they could pay at that time. [Movant] stated that he and Haile had access to $70,000 and could probably come up with more. Rodriguez said, "and the tool?" Haile asked in response, "Oh, you want the tools now?" Rodriguez said that he did, so the three continued to negotiate Haile and [Movant's] payment of guns and money. Rodriguez asked, "you bring five gun?" And [Movant] replied, "Yeah." Then, [Movant] and Haile left to obtain the rest of the payment.

Agents stationed at Jamaica Flava then observed several men loading large, heavy bags into the back of a truck registered to [Movant]. [Movant] and Haile drove the truck back to the hotel, but left the parking lot when they realized Rodriguez was not present. They drove to a nearby restaurant where DEA agents arrested them [without a warrant].

Agents found a Glock .45 caliber pistol on Haile. In [Movant's] truck, agents found: (1) $70,000 in a plastic bag in the back seat; (2) a loaded .40 caliber handgun in a holster in the center console; (3) a bag

4

containing loose cash, Jamaica Flava business cards, and loose
marijuana in the back seat; (4) two Norinco 7.62 caliber SKS rifles,
one with an obliterated serial number, in the vehicle's flatbed; and (5)
a 9–millimeter, an M–11 machine gun (not registered to either
defendant), a bulletproof vest, and ammunition for a .40 caliber, a 7.62
caliber, and a 9–millimeter, all inside a gym bag in the flatbed.

*United States v. Haile*, 685 F.3d 1211, 1214-16 (11th Cir. 2012).  Agents then

obtained and executed a search warrant for the restaurant, where they found two

assault rifles, a shotgun, a handgun, ammunition for those weapons, digital scales,

cash, and 360 grams of marijuana.  (Doc. 209 at 173-84.)  Movant was not charged

with unlawful possession of any of the items found at the restaurant.  (Doc. 112.)

Attorney Kendal Silas represented Movant in pre-trial proceedings, at trial, at

sentencing, and on direct appeal.[2]  Before trial, Silas filed motions to suppress the

evidence found in Movant's vehicle, the evidence found in the restaurant, any

statements Movant made to police, and evidence of any alleged prior bad acts.

(Docs. 29 through 31, 45, 66.)  Silas also filed other pre-trial motions, including

one to dismiss the machine gun possession charge and other charges.  (Docs. 32,

35, 36, 40, 70.)

---

[2] Silas did not represent Haile, who had separate counsel.

AO 72A
(Rev.8/82)

I held an evidentiary hearing on the motions to suppress. (Doc. 77.) I noted at the outset of that hearing that Movant had presented nothing but a "conclusory allegation" that there was false information in the affidavit for the search warrant for the restaurant and had not presented an affidavit supporting the allegation. (*Id.* at 9-10.) I further noted that I had given Movant an opportunity to supplement that claim, but at the time of the hearing it "was still just conclusory without an affidavit or foundation." (*Id.*) I thus ruled that Movant did not meet the standard for a hearing on that claim under *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.*; *see* Doc. 93-1 at 15 n.2 (discussion of this ruling in my report and recommendation).)

I ultimately recommended that Movant's (and Haile's) motions to suppress evidence be denied. (Doc. 93-1.) Silas filed objections to my recommendation. (Doc. 98.) The Honorable Thomas W. Thrash, Jr. adopted the recommendation as to Movant and denied Movant's motions to suppress. (Doc. 103.)

Shortly before trial, Silas filed a motion for an interpreter, which he said was "needed to allow [Movant] to effectively exercise his right to testify at trial" given that Movant's varied English dialect and stuttering impediment made him difficult to understand at times. (Doc. 141.) The Court granted that motion. (Doc. 142.) Movant did not testify at trial, however, and claims in his § 2255 motion, as

6

discussed below, that he did not testify because Silas wrongly advised him not to do so.

At trial, Movant did not contest the marijuana charges, but contested the other charges primarily by asserting the defense of entrapment. When Respondent rested its case, Silas moved for a judgment of acquittal on the cocaine and firearm charges. (Doc. 210 at 14-15, 20, 27-29, 34-35.) The Court granted the motion in part, finding that there was insufficient evidence that Movant conspired to possess or attempted to possess at least five kilograms of cocaine and 1,000 kilograms of marijuana. (*Id.* at 18-22.) The Court submitted those charges to the jury with threshold amounts of 500 grams of cocaine and 100 kilograms of marijuana, and the jury found Movant guilty as to those quantities. (*Id.*; Doc. 174.) The Court otherwise denied Movant's motion for judgment of acquittal. (Doc. 210 at 31, 35.)

After trial, and before sentencing, Silas renewed his motion for judgment of acquittal and filed a motion for new trial. (Docs. 180, 181.) Silas argued in those motions that the evidence presented at trial was insufficient to convict Movant of the non-marijuana charges and that the Court erroneously instructed the jury on the firearm charges. (*Id.*) The Court held a hearing on those motions and denied them. (Doc. 214.)

7

Movant's conviction in count four for possessing a machine gun in furtherance of a drug trafficking crime triggered a statutory minimum sentence of thirty years' imprisonment. 18 U.S.C. § 924(c)(1)(B)(ii). The Court imposed that sentence for count four and a consecutive sentence totaling seventy-eight months for the other counts. (Doc. 189.) The total sentence of 438 months' imprisonment was the low end of the sentencing range recommended by the U.S. Sentencing Guidelines (the "Guidelines"). (Doc. 217.)

Movant raised several claims on appeal. He argued that the indictment was insufficient as to count four and that the Court erroneously failed to instruct the jury that it had to find, as to count four, that Movant possessed a machine gun and knew it was a machine gun when he possessed it. *Haile*, 685 F.3d at 1216-18. He also argued that the evidence was insufficient to convict him of the cocaine and firearm charges because law enforcement entrapped him into committing those crimes, the Court erroneously failed to instruct the jury on the definition of a machine gun and his defense of outrageous government conduct, he did not knowingly possess a firearm with an obliterated serial number as charged in count six, and his sentence was unconstitutional and substantively unreasonable. *Id.* at 1218-19, 1221-22.

AO 72A
(Rev.8/82)

The court of appeals rejected all of Movant's claims except his claim regarding count six. *Id.* at 1217-24. The court of appeals held, on an issue of first impression in the Eleventh Circuit, that the government must prove a defendant's knowledge of an obliterated serial number for a charge like the one in count six. *Id.* at 1220. Because Respondent failed to prove that fact in this case, the court of appeals vacated Movant's conviction on count six. *Id.* at 1221. That did not change Movant's sentence, however, because the Court imposed a sixty-month prison sentence on count six to run concurrently to the seventy-eight-month sentence imposed on other counts. *Id.* at 1224. The court of appeals thus affirmed Movant's 438-month sentence. *Id.* The U.S. Supreme Court denied Movant's petition for a writ of certiorari. (Doc. 240).

Movant contends in his § 2255 motion that Silas rendered ineffective assistance. (Doc. 241 at 4-5, 7-30.) Specifically, Movant contends that Silas improperly failed to:

1.  attempt to negotiate a guilty plea;

2.  properly handle the Fourth Amendment challenge to the search warrant for the restaurant and abandoned the claim on direct appeal;

3.  move for a severance from Haile for trial;

9

4.      properly advise Movant regarding whether he should testify at trial; and

5.      (a) renew his request for a jury instruction regarding knowledge of a machine gun and object when that was not included in the proposed jury instructions; (b) object to the prosecutor's reference in closing arguments to Movant as an arms dealer not entitled to justice or mercy; and (c) properly contest the machine gun charges at trial.

(*Id.*)  Movant contends in his sixth, and final, ground for relief that the cumulative effect of Silas' errors deprived him of his fundamental right to a fair trial.  (*Id.* at 5, 28-30.)

## II.      Relevant Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  A sentence is subject to collateral attack when there is a fundamental defect that results in a complete miscarriage of justice.  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).

10

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no objectively competent lawyer would have taken the action that his lawyer took or would have failed to take the action he contends the lawyer should have taken. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

11

A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Id.* at 697.

## III. Analysis

An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Fontaine v. United States*, 411 U.S. 213, 215 (1973). The record in this case conclusively demonstrates that Movant is not entitled to relief under § 2255.

### A. Ground One

Movant contends that he expressed a desire to plead guilty to the marijuana charges and the charges regarding the firearm registered to him (a handgun found in his vehicle at the time of his arrest) so long as he avoided the mandatory minimum thirty-year sentence applicable to the machine gun charge in count four. (Doc. 241 at 13-14.) Movant contends that "there was no noticeable efforts [by Silas] or any discussions about the possibility to plead guilty to limit [his] sentencing exposure." (*Id.* at 13.)

When a § 2255 movant contends that he would have pled guilty if he had received proper advice from his lawyer, *Strickland*'s standard applies. The movant

12

"'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" *Coulter v. Herring*, 60 F.3d 1499, 1504 & n.7 (11th Cir. 1995) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). That inquiry includes considering the probability that the movant would have obtained a more favorable outcome by pleading guilty than he did by standing trial. *See Hill*, 474 U.S. at 59.

Movant's claim here is grounded solely in speculation that he could have obtained the plea deal he says he wanted – one that did not include a plea to the most serious charge in the indictment for possession of a machine gun in furtherance of drug trafficking. Movant has presented no evidence that Respondent would have even considered, much less agreed to, such a deal. In short, Movant has presented nothing to support a finding that there was a reasonable probability he could have gotten a plea deal more favorable than the outcome of his trial had Silas sought one. And contrary to Movant's unsupported assertion, a defense counsel's failure to seek a negotiated guilty plea does not automatically constitute constitutionally deficient performance in all circumstances.[3] *See Strickland*, 466

---

[3] The two cases Movant cites for that proposition hold nothing of the sort. *See* Doc. 248 at 2; *Cowart v. United States*, 139 F. App'x 206, 208 (11th Cir. 2005) (holding that § 2255 movant's claim that counsel was ineffective for failing to

13

U.S. at 687-88 (rejecting notion that there is any "particular set of detailed rules for counsel's conduct" or any "specific guidelines").

There is no basis to find that Silas was constitutionally deficient in not seeking the deal Movant wanted or that Movant was prejudiced by Silas' alleged failure to do so.  Movant thus is not entitled to relief on ground one.

B.    Ground Two

Movant complains here of Silas' failure to submit an affidavit in support of his pre-trial claim of a *Franks* violation, i.e., that there were false statements in the affidavit supporting the search warrant for the Jamaica Flava restaurant.  (Doc. 241 at 14-17.)  As discussed above, I rejected the *Franks* claim outright because Movant presented no evidence to support it.  *See supra* Part I.

The allegedly false statements in the search warrant affidavit were that agents saw Movant loading the bags containing weapons onto Movant's truck at the restaurant on the day of Movant's arrest and statements implying that more weapons were in the restaurant.  (Doc. 241 at 14-17.)  Movant concedes that he was

_____

negotiate a guilty plea on a particular count was not barred by the sentence appeal waiver in the plea agreement); *Stano v. Dugger*, 921 F.2d 1125, 1150-52 (11th Cir. 1991) (holding that state prisoner who pled guilty against his counsel's advice did not show ineffective assistance of counsel).

not charged with the weapons seized from the restaurant, but argues that presentation of that evidence at trial prejudiced him because it undermined his entrapment defense that was based on lack of predisposition. (*Id.*)

Movant has not shown that Silas was deficient for not supporting the *Franks* claim or further pursuing it – including on appeal – because there is no evidence that law enforcement deliberately made false statements in the search warrant affidavit or recklessly disregarded the truth of the challenged statements. *See Franks*, 438 U.S. at 171 (describing applicable standard). Movant has pointed to nothing in the record, including evidence presented at pre-trial hearings or at trial, that supports a finding that the search warrant affiant knew the statements in the affidavit regarding Movant were false or made those statements recklessly. It is not enough to show that the statements were inaccurate or made negligently. *See id.* ("Allegations of negligence or innocent mistake are insufficient."). Movant has shown no meritorious basis on which Silas could have pursued the *Franks* claim. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (holding that because claims lacked merit, "any deficiencies of counsel in failing to raise or adequately pursue them cannot constitute ineffective assistance of counsel").

AO 72A
(Rev.8/82)

Even if Movant had shown that the statement about him moving the bags into the truck was false, he has not shown prejudice from Silas' failure to pursue the claim. The information in the search warrant affidavit, excluding the challenged statements, was sufficient to support a finding of probable cause for the restaurant search. *See* Doc. 46-1 (affidavit); *Franks*, 438 U.S. at 171-72 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

The affidavit described a meeting between Movant, Haile, and undercover DEA agents on the day of Movant's arrest, which Movant does not dispute occurred. It also is undisputed that Movant and Haile were at the restaurant later that day when several men loaded large, heavy bags from the restaurant onto the truck registered to Movant, after which time Movant and Haile then drove that truck to the site of the arranged deal. The truck was searched and the firearms that were the subject of the indictment were found in the truck. There was ample information in the affidavit, even excluding the statements about Movant's personal involvement, to find probable cause for issuance of the search warrant for the restaurant. (*See* Doc. 46-1.)

16

Finally, Movant's claim in ground two fails because even if he overcame the hurdles discussed above, he has not shown a reasonable probability that if Silas had done more on the *Franks* claim (1) the Court would have excluded the evidence or (2) the court of appeals would have found admission of the evidence prejudicial to Movant, i.e., that the jury likely would have acquitted Movant absent the evidence. Movant does not even attempt to make those showings. He simply makes the wholly conclusory claim that the evidence from the restaurant prejudiced him at trial because Respondent used it, in an unspecified manner, "to refute the lack of predisposition of the entrapment defense, and to label [Movant] an arms-dealer." (Doc. 248 at 5.) Movant is not entitled to relief on ground two.

C.    Ground Three

Movant contends that Silas should have moved to sever his trial from Haile's. (Doc. 241 at 17-19.) Movant concedes that there was no significant evidence of conflicting defenses at trial, but argues "there should have been much evidence or incidents of conflicting defenses in light of all the circumstances in this case." (*Id.* at 18-19.)

Movant did not identify any conflicting evidence, though, that Silas should have introduced. Movant simply argues that the evidence at trial showed that it was

17

Haile who supplied the money for the drug deal and dealt in cocaine, and he could have testified more directly to his lack of involvement if Silas had not advised against it. (Doc. 248 at 6.) Movant contends that Silas advised against him testifying "because it incriminated Haile and the antagonistic defenses would have been more prejudicial." (*Id.*)

Joint trials of persons charged together, particularly persons charged with conspiracy, are favored. *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995). "The decision whether to grant a motion for severance "is committed to the sound discretion of the district court and can only be overturned for an abuse of discretion," which requires a showing of "compelling prejudice." *Id.* at 1158-59 (quotation marks omitted).

Movant has not shown that he was prejudiced by a joint trial with Haile or identified any basis upon which Silas could have persuaded the Court to sever the trial. The only conflict Movant mentioned in connection with his severance claim is his contention that the jury's verdict on count four (possession of firearms in furtherance of drug trafficking) conflicted with the court of appeals' finding on count six (possession of a firearm with an obliterated serial number). (Doc. 241 at 19 (referring to it as a "glaring contradiction").) There was no conflict there,

though, because the jury did not find, in connection with count four or any other charge, that Movant knew that the firearm in count six had an obliterated serial number. (Doc. 174.) Indeed, the Court did not tell the jury it had to find that fact, which is why the court of appeals reversed the conviction on count six. *Haile*, 685 F.3d 1220-21 (holding that although Respondent proved, as the jury found, that Movant "had constructive possession of the gun at the time of the arrest, . . . this constructive possession alone cannot be sufficient to establish [Movant's] knowledge of the obliterated serial number").

Movant's claim that his own testimony would have incriminated Haile and created conflicting defenses does not demonstrate that Silas was ineffective on the severance issue for at least two reasons. First, Silas presented to the jury, via cross-examination of Respondent's witnesses and his arguments, Movant's defense that he personally was not involved in anything other than marijuana. In fact, Respondent's own evidence demonstrated that Haile was more involved in the drug deal. There was thus no reasonable basis for Silas to believe that severance was necessary to avoid the prejudice of conflicting defenses if Movant testified. *See Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) ("The widespread use of the tactic of attacking trial counsel by showing what 'might have been'

proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight."). Second, Movant was free to testify to his alleged innocence regardless of Silas' advice and failure to seek a severance. *See infra* Part III.D.

Movant has shown neither deficient performance nor prejudice from Silas' failure to seek a severance. He thus is not entitled to relief on ground three.

D.     Ground Four

Movant claims that his testimony at trial could have buttressed his entrapment defense and offered the "rare opportunity to present direct evidence to the jury about his state of mind and what he actually knew with little or no risk of it being impeached." (Doc. 241 at 21.) But, he says, Silas advised him at the last minute not to testify "because of his accent and stuttering problem" despite the Court having granted Silas' motion for an interpreter. (*Id.*) Movant concedes that he told the Court at trial that he personally chose not to testify free of any coercion or threats, but now contends that "his blind trust in [Silas'] erroneous advice precluded him from a knowing and intelligent decision." (*Id.*)

Movant's statements to the Court at trial that he understood his right to testify and voluntarily chose not to testify refute his current contention – asserted

20

for the first time over three years later – that Silas somehow prevented him from knowingly and intelligently making that decision. (*See* Doc. 209 at 233-34.) But even assuming that Silas overcame Movant's will and better judgment on the issue, Movant has not shown that no competent lawyer would have advised him not to testify in this case.

Movant's testimony would have been nothing more than a blanket denial of all charges except his agreement to buy marijuana and denials that he knew about the weapons that were in his truck when he was arrested. (Doc. 241 at 20-22, 31-33.) Respondent presented evidence that would have contradicted such denials, including Movant's own statements in recorded conversations with undercover agents. The evidence corroborated Movant's recorded statements, including Movant's undisputed presence at the in-person negotiations with agents, his presence at all the events that occurred on the day of his arrest, and his presence in his own truck with guns at the time when the deal was to be consummated. Respondent could have again emphasized the recordings and other damning evidence to the jury in cross-examination of Movant had he testified as he says he would have testified. It was not unreasonable for Silas to advise Movant not to

testify, regardless of the stated basis of the advice, given that the trial evidence did not corroborate Movant's simple denials of involvement and knowledge.

Movant also has not shown prejudice from Silas' alleged advice not to testify. I cannot conclude from the record that there is a reasonable probability that the jury would have acquitted Movant of any of the charges had he testified as described in his § 2255 motion.

The U.S. Supreme Court recently emphasized, again, that criminal defense counsel "should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'" and reminded courts to faithfully apply the "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*). Movant has not overcome that strong presumption with regard to Silas' alleged advice that Movant not testify and has not shown prejudice. He thus is not entitled to relief on ground four.

E.    Ground Five

Movant makes three claims in ground five related to his firearm convictions. I discuss each claim in turn.

22

First, Movant complains of Silas' failure to renew his request for a jury instruction that, in order to be convicted of the charges associated with the M-11 firearm, Movant had to know the M-11 was a machine gun. (Doc. 241 at 23-25.) Silas requested the charge when he argued for a judgment of acquittal at the close of Respondent's case, but did not renew the request at the charge conference that occurred just a few minutes later. (Doc. 210 at 27-29, 35-49.) The Court decided to include on the verdict form the question in count four of whether Movant knew the M-11 had the characteristics of a machine gun. (*Id.* at 29.) The jury answered that question affirmatively. (Doc. 174 at 3.)

Silas was not deficient for not renewing his request for the jury instruction because Respondent "was not required to prove, and the jury did not have to find beyond a reasonable doubt, that [Movant] and Haile knew the firearm in question was a machine gun." *See Haile*, 685 F.3d at 1218 (holding that the Court did not err in not giving the requested instruction). Moreover, just minutes before the time when Movant says Silas should have renewed his request for the instruction, the Court declared that it was addressing the machine gun knowledge issue by including the question on the verdict form. Movant submits that the Court's decision indicates that it would have instructed the jury on the issue if Silas had

23

renewed the request, but that is nothing more than speculation. (Doc. 241 at 23.) The record demonstrates that the Court was not going to do more than include the question on the verdict form. The Court was "satisfied with the verdict form" because "the verdict form is absolutely crystal clear that they've got to find that he knew it was a machine gun," (Doc. 210 at 134-35), and "protected the Defendants against any inadvertent conviction . . . that did not involve a finding by the jury that [Defendants] knew the gun was a machine gun," (Doc. 214 at 23-24). Given the Court's clear statements and the law on the issue, it was eminently reasonable for Silas not to renew his request for the jury instruction.

Nor has Movant shown prejudice from Silas' failure to renew the request for the jury instruction. As discussed above, the Court's explanation for including the question on the verdict form dispels a finding that it would have given the instruction had Silas renewed his request. And even if the Court had given the instruction upon a renewed request, it is not probable that the jury would have acquitted Movant of the machine gun charges. The jury found, as reflected on the face of its verdict as to count four, that Movant knowingly possessed a weapon that

he knew had the characteristics of a machine gun.[4]  (Doc. 174 at 3.)  "So if there

was any error . . . in failing to instruct the jury on what was a machine gun in

connection with Count 4, it was completely irrelevant and harmless to the verdict

that the jury rendered."  (Doc. 214 at 23 (Court's statement at hearing on post-

judgment motions).)

Second, Movant complains of Silas' failure to object to the following

statements the prosecutor made during the rebuttal portion of his closing argument:

> Now, Ladies and Gentlemen, the question before the court now
> is not who are they [Defendants]. We know who they are. We know
> that they are drug dealers. We know that *they are arms dealers*. And
> we know they possessed these weapons in furtherance of this drug
> conspiracy. The question now before this court is who are you. Are
> you the 12 who say that these guns are illegally possessed or injustice
> for our community? Are you the 12 who say that this cocaine and this
> marijuana is no good for our community?

> That question now lies with you. They ask for justice and mercy.
> Well, *that's not your job to give them justice and mercy*. We give the
> community justice and mercy. And justice in this case is guilty on all
> of the counts.

---

[4] Movant wrongly states that the jury's finding here contradicted the court of
appeals' finding that there was insufficient evidence to show that Movant knew the
firearm charged in count six had an obliterated serial number.  The sole firearm
charged in count six was not the machine gun, but a different weapon.  (Doc. 112);
*Haile*, 685 F.3d 1220-21.

(Doc. 210 at 109-10 (emphasis added); *see* Doc. 241 at 25-27.)  Movant views the highlighted language as "inflammatory remark[s]" that were not supported by the evidence presented at trial, "irreparably prejudiced the jury's verdict," and led the jury to convict Movant of the firearms charges.  (Doc. 241 at 26.)

The prosecutor's "arms dealers" remarks were not inflammatory or improper because they were supported by the evidence presented at trial.  As discussed above, Movant was arrested in his own vehicle with several firearms at a time when he had agreed, in recorded conversations, to participate in a drug and gun transaction.  Nor was it improper for the prosecutor to argue that the jury should not give Movant the justice and mercy he sought.  Movant has not shown that no competent lawyer would have failed to object to those remarks.

Even if Movant had shown that Silas was deficient for not objecting to the prosecutor's remarks, he has not shown a reasonable probability that the trial would have ended differently had Silas objected.  There is no basis to believe the Court would have granted a mistrial or that the jury would have acquitted Movant of any charge had Silas objected to those isolated statements.

Third, Movant contends that it was Silas' ineffectiveness that led the court of appeals to refuse to consider his claim that the Court erred by not defining

"machine gun" for the jury. (Doc. 241 at 27-28.) The court of appeals noted that "[b]oth parties referred to the gun as a machine gun throughout the trial, including in closing arguments" and concluded that it "need not address this issue because [Movant's] concession at trial that the gun was a machine gun constitutes invited error and precludes review of this issue." *Haile*, 685 F.3d at 1221. Movant contends that he would have prevailed on the claim on appeal had Silas not conceded at trial that the M-11 was a machine gun. (Doc. 241 at 28.)

Silas was not deficient for effectively conceding that the M-11 was a machine gun because the undisputed evidence at trial, consisting of expert testimony from a law enforcement agent specializing in firearms, was that the M-11 was a machine gun. (Doc. 209 at 215-25.) Movant has identified no evidence that Silas could have presented at trial to dispute that the M-11 was a machine gun. There was thus no basis for Silas to contest the issue.

Movant also has not shown a reasonable probability that the outcome of his trial or appeal would have been different if Silas had not effectively conceded that the M-11 was a machine gun. The definition of a machine gun was not an issue because the evidence that the M-11 was a machine gun was undisputed and because Movant's defense was that he did not intend for or know that any firearms would be

27

involved in the drug deal. The law thus did not require that the definition of a machine gun be included in the jury instructions.[5] *See United States v. Morales*, 978 F.2d 650, 652 (11th Cir. 1992) (failure to give jury instruction is error only if, among other things, "the failure . . . seriously impaired the defendant's ability to present an effective defense").

Movant has shown neither deficient performance nor prejudice as to any of his claims regarding his firearm convictions. He thus is not entitled to relief on ground five.

---

[5] Movant recently filed a notice of supplemental authority in support of his claims regarding the machine gun, asking the Court "to take into consideration the recent United States Supreme Court ruling in Rosemond v. United States." (Doc. 261.) The Supreme Court held in that case that a defendant aids or abets a violation of 18 U.S.C. § 924(c) only if the government proves "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014). *Rosemond* has no bearing on Movant's claims of ineffective assistance of counsel because Silas argued throughout trial that Movant did not intend for any firearms to be involved in the drug deal and did not know that firearms were present on the day of the deal. Moreover, even if *Rosemond* is relevant, Silas cannot be faulted for not anticipating that ruling because "*Strickland* is concerned with prevailing professional norms at the time of trial, not with subsequent developments in the law." *See LeCroy v. United States*, 739 F.3d 1297, 1323-24 (11th Cir. 2014).

F.    <u>Ground Six</u>

Movant's final claim is that the cumulative effect of Silas' errors deprived Movant of a fair trial and undermined the validity of the jury's verdict. (Doc. 241 at 28-30.) Movant lists the alleged errors discussed above as the basis of his cumulative error claim. (*Id.*)

Courts "address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors [found] . . . in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). As discussed above, Movant has not shown, as to any of his claims, that he was deprived of his constitutional right to effective assistance of counsel. *See supra* Parts III.A through III.E. Those claims thus provide no support for Movant's claim of cumulative error. *See Morris*, 677 F.3d at 1132 (holding that cumulative error claim failed because none of the individual claims of error had any merit and, thus, there was "nothing to accumulate"). Movant is not entitled to relief on ground six.

AO 72A
(Rev.8/82)

## IV.    Certificate of Appealability ("COA")

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).  Rule 11 of the Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here.  Movant has not shown that he received ineffective assistance of counsel, and that conclusion is not reasonably debatable for the reasons discussed above.

AO 72A
(Rev.8/82)

**V.    Conclusion**

For the foregoing reasons, I **RECOMMEND** that Movant's motion to vacate

sentence under 28 U.S.C. § 2255 [241] and a certificate of appealability be

**DENIED**.  I **FURTHER RECOMMEND** that case number 1:13-cv-3296-TWT-

GGB be **DISMISSED**.

**SO RECOMMENDED** this 23rd day of October, 2014.


*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)